616 P.2d 63

**The STATE of Arizona, Appellee,**

v.

**Ernest Wendall LEHMAN, Appellant.**

**No. 2 CA–CR 1881.**

Court of Appeals of Arizona, Division 2.

May 15, 1980.

Rehearing Denied July 2, 1980.

Review Denied Sept. 4, 1980.

---

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Kent D. Morgan, Tucson, for appellant.

## OPINION

HATHAWAY, Chief Judge.

Appellant was found guilty by a jury of two counts of assault with a deadly weapon and was sentenced to not less than five nor more than 15 years on each count, the sentences to run concurrently. In Count I, appellant was charged with assaulting Jo-

sephine Lehman, his wife, and in Count II, assaulting Deborah Deacon, Mrs. Lehman's daughter. On appeal, appellant contends it was reversible error to allow testimony of certain statements made by Mrs. Lehman who was not present at trial, and also, that the state's cross–examination of his character witness and introduction of rebuttal evidence was improper.

Prior to trial, the court refused the state's request to use a transcript of the preliminary hearing testimony of Mrs. Lehman. The court found that the state had not made a good faith effort to obtain her attendance at trial and, because defense counsel had had no opportunity to cross–examine Mrs. Lehman concerning appellant's sanity at the time of the incident in question, appellant was deprived of his right of confrontation at trial. As further support for its ruling, the court relied on a letter written by Mrs. Lehman in which she indicated that she had lied at the preliminary hearing and had been the instigator of much of the parties' difficulties.[1]

■ Appellant's sole defense was insanity. Over defense counsel's objections, Mrs. Lehman's daughter was permitted to testify as to statements made by her mother concerning threats by appellant prior to the assault. A former daughter–in–law of Mrs. Lehman was also allowed to testify as to three prior incidents in which Mrs. Lehman had expressed fear of appellant. The state justified the use of this testimony by arguing that the statements were offered to show the state of mind of the declarant/victim, Mrs. Lehman, i. e., why she was frightened of appellant. Defense counsel argued that Mrs. Lehman's state of mind had no relevance to any of the issues.

We agree that Mrs. Lehman's statements were inadmissible. Although the statements may have been indicative of her state of mind on the day of the assault, and therefore not excludable as hearsay, see *State v. Izzo*, 94 Ariz. 226, 383 P.2d 116 (1963), they were not relevant to any issue in the case. Unlike the situation in *State v. Izzo*, supra, where a defense of accident was interposed, or *State v. Duke*, 110 Ariz. 320, 518 P.2d 570 (1974), or *State v. Gause*, 107 Ariz. 491, 489 P.2d 830 (1971), vacated on other grounds, 409 U.S. 815, 93 S.Ct. 192, 34 L.Ed.2d 71 (1972), where identity of the murderer was in issue, or *People v. Schindler*, 273 Cal.App.2d 624, 78 Cal.Rptr. 633 (1969), where a claim of self–defense was raised, there were no material issues in dispute here to which Mrs. Lehman's state of mind was relevant.

■ A statement offered to show the state of mind of a declarant/victim may be admissible under the "state of mind" exception to the hearsay rule as long as the declarant/victim's state of mind is relevant to an issue involved in the criminal proceedings. *State v. Ramirez*, 116 Ariz. 259, 569 P.2d 201 (1977); *State v. Goodrich*, 97 Idaho 472, 546 P.2d 1180 (1976); *United States v. Brown*, 490 F.2d 758 (D.C. Cir. 1973). Here the only issue was appellant's mental responsibility for the acts he committed. There was no dispute as to his conduct.

■ We are unable to say that, as in *State v. Ramirez*, supra, admission of Mrs. Lehman's statements did not constitute error so prejudicial as to require reversal.[2] Here, the statements of Mrs. Lehman referred to past conduct of appellant towards her which caused her to be frightened of him. The state, in arguing for admissibility, stated:

"What we are talking about is the declarant, being Josephine, her state of mind. Okay. If she shows she is frightened towards Ernie and tends to show a prior disposition on Ernie's part to scare her, to

---

1. Mrs. Lehman had advised the prosecution that she had reconciled with appellant and did not want to press charges. She also advised him that she would not voluntarily testify against appellant.

2. In *Ramirez*, the jury was twice admonished to disregard the testimony relating the statements and the statement itself was quite "innocuous and probative of very little, if anything, concerning the appellant." 116 Ariz. at 265, 569 P.2d at 207.

assault her, it shows, in other words that there was, it shows that this incident in question right now is not an isolated incident.

For example, homocide [sic] cases or assault cases where the defendant claims, 'Hey, we never had any troubles.' And claims self defense or an accident. But if the victim on prior occasions has said he assaulted me or we were having problems, then it tends to rebut that, or negate that claim. That's why it is admissible."

The narration of past acts or conduct of the defendant in the victim's statement presents a great danger of jury misuse. *People v. Lew*, 68 Cal.2d 774, 69 Cal.Rptr. 102, 441 P.2d 942 (1968). As pointed out in *United States v. Brown*, supra, a statement such as, "I am afraid of D–he beat me last week," is so close to the ultimate issue at hand that there is a great danger that the jury will misuse the statement and assume some truth to the allegation of past conduct on the part of D. Mrs. Lehman was not available at trial to cross–examine or confront. By her own admission, in the letter sent to the prosecutor, she had lied at the preliminary hearing. If her testimony under oath were untrue, certainly her other statements were suspect. We have no difficulty concluding that the error in allowing the testimony as to Mrs. Lehman's statements constituted reversible error.

■ Appellant also complains of cross–examination of his character witness as to prior bad acts and the trial court's allowing the state's rebuttal witnesses to testify as to prior conduct of appellant. A defense witness testified as to appellant's non–violent character. The prosecutor, on cross–examination, questioned him about specific instances of violent conduct or violent behavior by appellant. Contrary to appellant's contention, however, a character witness may be asked on cross–examination about specific instances of conduct, provided they are relevant. 17A A.R.S. Rules of Evidence, rule 405(a); *U.S. v. Benedetto*, 571 F.2d 1246 (2nd Cir. 1978).

We do agree with appellant that the rebuttal testimony as to specific instances of his conduct should not have been allowed. The state relies on Rule 405(b) which states:

"In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

■ To be an "essential element" the character trait must be an operative fact which under substantive law determines the rights and liabilities of the parties. *West v. State*, Ark., 576 S.W.2d 718 (1979); *McClellan v. State*, 264 Ark. ——, 570 S.W.2d 278 (1978). As stated in *McClellan:*

"For example, in a tort case involving the defendant's asserted negligent entrustment of his vehicle to an incompetent driver, the plaintiff must show as a part of his substantive proof that the defendant was aware of the driver's trait of incompetence. Proof of specific instances of incompetence is therefore admissible. *Ozan Lbr. Co. v. McNeely*, 214 Ark. 657, 217 S.W.2d 341, 8 A.L.R.2d 261 (1949). Again, if the plaintiff sues for slander because the defendant called him a liar, and the defendant pleads as a defense that the plaintiff *is* a liar, the plaintiff's character as a truthful person is an essential element of the defense. Specific instances of the plaintiff's lies would therefore be admissible at common law. See Wigmore, Evidence, Secs. 202 and 207 (3rd ed., 1940)." 570 S.W.2d at 280. (Emphasis in original)

■ Rule 405 is taken verbatim from Fed. Rules Evid., Rule 405, 28 U.S.C.A. (1975). The Advisory Committees Notes to the federal rules explain why direct evidence of specific conduct is limited to instances in which the trait of character is squarely in issue:

"Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently the rule confines the

use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion."

Appellant's proneness to violence was not, in the strict sense, in issue. His defense was insanity and he attempted to prove he was not a violent person in order to show he must not have known what he was doing. The state, in rebuttal, was using proof of appellant's character trait for violence circumstantially, i. e., to create an inference that he did know what he was doing. Under these circumstances, such proof is limited to reputation and opinion testimony.

Reversed.

HOWARD and RICHMOND, JJ., concur.