628 P.2d 580

**STATE of Arizona, Appellee,**

v.

**Richard George CHRISTENSEN,
Appellant.**

No. 4627.

Supreme Court of Arizona,
In Banc.

April 14, 1981.

Rehearing Denied May 27, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Richard S. Oseran, Pima County Public Defender by Allen G. Minker, Deputy Public Defender, Tucson, for appellant.

STRUCKMEYER, Chief Justice.

Appellant was convicted of first degree murder and sentenced to life imprisonment. He appeals. Reversed.

Appellant and his wife, Shirley Mae, shortly after their marriage in March 1977 moved to Tucson, where they opened a small jewelry and pottery shop. Early in 1978, they separated. Shirley rented an apartment in which she lived with her daughter by a former marriage, Kim. On May 24, the marriage of appellant to Shirley was dissolved and he moved to Phoenix, Arizona. On Sunday, June 4, 1978, he drove to Tucson to Shirley's apartment. She was not at home, but arrived about 3:30 a. m. Monday. Although she allowed appellant to enter her apartment, she would not talk with him until after she rested. Later that morning, Kim saw and talked to appellant on the patio of their home. Kim then left and went to school. When she returned, she thought the apartment was unoccupied and contacted some relatives and later the police.

Early in the afternoon of the following day, detectives from the Tucson police department searched the apartment. They found Shirley's body under a bed, a ligature of twine around her neck. An examination of the neck revealed eight areas of ecchymosis and hemorrhage, indicative of manual strangulation. She had also sustained two severe head wounds and numerous small superficial abrasions and lacerations over the entire body. The twine around Shirley's neck matched twine found in a basket in the apartment. The police also recovered

sheets, towels, bottles of cleaner and pop bottle fragments from a dumpster near the apartment.

Appellant, on his return to Phoenix, told an acquaintance first that he had hit his ex-wife with a pop bottle during an argument, and later that he had strangled her and left her under a bed. The acquaintance notified the police and appellant was arrested. He gave a statement in which he confessed that he drove to Tucson to see Shirley, but not with the intention of killing her; that on the morning of the 5th of June they became involved in a heated argument and at one point Shirley struck at him with a kitchen knife. The argument continued until appellant hit Shirley with a pop bottle. Appellant said that he laid down next to Shirley for an undetermined time, then choked her with his hands. He did not remember applying a ligature.

Appellant does not deny killing his former wife, nor did he raise the defense of insanity, but at his trial he called a psychiatrist as a witness. After an offer of proof, the court sustained an objection to the psychiatrist's testimony. The psychiatrist, an assistant clinical professor of psychiatry at the University of California,[1] would have testified that he had interviewed appellant and had reviewed tests which had been administered to him; that, in his expert opinion, appellant had difficulty dealing with stress and in stressful situations his actions were more reflexive than reflective.

The court instructed the jury on the elements of first and second degree murder. It also instructed the jury on voluntary manslaughter as a killing resulting from a sudden quarrel or in heat of passion; that the defendant must have been provoked by circumstances that would cause a reasonable man to act violently and he must in fact have been in the heat of passion at the time of the killing.

Since appellant admitted killing his former wife, one of the questions for the jury was whether appellant premeditated the offense so as to justify a conviction for first degree murder, A.R.S. § 13–452 (now A.R.S. § 13–1105), 5A A.R.S.

Appellant urges that the court erred in excluding the psychiatrist's testimony and that the testimony was admissible under Rule 404(a)(1), Ariz.R.Evid., which provides:

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith * * * except:

* * * Evidence of a pertinent trait of his character offered by an accused * *."

Character traits may be established by both expert and non-expert opinion. Rules 405(a), 701, Ariz.R.Evid. The appellant argues that "Stated in its shortest terms," he called the psychiatrist "to testify to Appellant's character trait of impulsivity" so as to establish "that the killing was not the result of reason or planning."

The trial court rejected the testimony in the belief that it raised the defense of "diminished responsibility" which this State has previously rejected. See *State v. Schantz*, 98 Ariz. 200, 403 P.2d 521 (1965), and *State v. Laffoon*, 125 Ariz. 484, 610 P.2d 1045 (1980).

In *State v. Schantz*, supra, the defendant pled not guilty to the charge of first degree murder and served a written notice of his intention to pursue the defense of insanity. A psychiatrist not only testified that defendant did not know right from wrong, but that Schantz's actions were outside his deliberate, volitional conscientious awareness. Schantz's motion that the jury be directed to return a verdict of acquittal on first degree murder was granted, but denied as to second degree. He then submitted a requested instruction to the effect that because of an underlying mental impairment, the defendant might be mentally incapable of entertaining the specific intent to kill which is involved in the offense of murder. Upon appeal, we held that Arizona adheres to the rule in *M'Naghten's* case:

---

1. California courts accept evidence of diminished responsibility to reduce the crime from first degree murder. *People v. Goedecke*, 65 Cal.2d 850, 56 Cal.Rptr. 625, 423 P.2d 777, 22 A.L.R.3d 1213 (1967).

"The test of legal insanity has two elements. An accused must have had at the time of the commission of the criminal act:

(1) Such a defect of reason as not to know the nature and quality of the act, or

(2) If he did know, that he did not know he was doing what was wrong."

We also said:

"Whereas the *M'Naghten* test for criminal responsibility involves a defect in perception or cognition, the requested instruction permits the jury to find the defendant not guilty of second degree murder if he was suffering from a mental impairment, defect, disorder, or deficiency so as to be incapable of entertaining malice aforethought, the intent to kill. This adds a third element, defect in volition.

The defendant states that the principle embodied in the requested instruction 'has been variously referred to as the "doctrine of diminished responsibility," "doctrine of partial responsibility," "partial insanity," and otherwise.' But whatever name may be used, in this appeal we take it to mean mental derangement distinguishable from the cognitive insanity as understood in the common law and contemplated by the rule of *M'Naghten's Case.* The practical result is that in the case of first degree murder the jury could consider defects in the volitional processes to determine the lack of deliberation and premeditation and, as here, in the case of second degree murder, the lack of malice aforethought necessary to establish the unlawful killing as murder." 98 Ariz. at 207–208, 403 P.2d 521.

We observe that the Legislature in 1977 readopted the rule in *M'Naghten's* case as the test for criminal responsibility, A.R.S. § 13–502, 5 A.R.S. The Legislature has also prescribed the conditions when murder may be reduced to manslaughter through the lack of reason or planning; that is, when a person acts in the heat of passion with adequate provocation. A person so acting is not wholly relieved of the responsibility for his actions; rather, the homicide is reduced from murder. See *Moore v. State,* 65 Ariz. 70, 75, 174 P.2d 282 (1946).

The distinguishing characteristic between murder and manslaughter is that malice is not an element of the latter. *Harding v. State,* 26 Ariz. 334, 341, 225 P. 482 (1924). Similarly, the distinguishing characteristic between murder in the first degree and murder in the second degree is the lack of premeditation in the latter. Former A.R.S. § 13–452, 5A A.R.S. If defendant knew the nature of his act and knew what he was doing was wrong, he is presumptively regarded as capable of premeditation. Since the jury here found the defendant guilty of first degree murder, it must have believed the defendant did not act in the heat of passion; or if he did act in the heat of passion, it was not the result of adequate provocation, that his actions were intentional (second degree murder) and that he premeditated (first degree murder).

In *State v. Dickey,* 125 Ariz. 163, 608 P.2d 302 (1980), we said:

"In the present case, the jury heard Dr. Gray's opinion of several traits of appellant's personality, such as being overly protective, easily fearful, and not prone to violence. These were matters about which expert opinion may provide assistance to a lay jury." *Id.* at 169, 608 P.2d 302.

The establishment of the character trait of acting without reflection tends to establish that appellant acted impulsively. From such a fact, the jury could have concluded that he did not premeditate the homicide. We therefore hold the court committed error in excluding the psychiatrist's testimony.

■ Our holding is, however, limited. We have said:

"The issue whether appellant was thinking reflectively prior to shooting Koester could be resolved by the jury without expert assistance, once it had determined the facts surrounding the shooting." *Id.*

An expert witness may not testify specifically as to whether a defendant was or was not acting reflectively at the time of a

killing. See Note, "Psychiatric Evidence in Criminal Cases for Purposes other than the Defense of Insanity," 26 Syracuse L.Rev. 1051, 1065 (1975). But it is inconsistent with fundamental justice to prevent a defendant from offering evidence to dispute the charge against him. This, of course, includes any of the elements which comprise the offense.

■ Appellant complains that the trial court allowed the introduction of certain testimony relating to declarations made by the victim, Shirley Christensen. The testimony contained three objectionable matters: (1) that she feared appellant, (2) that he had threatened her, and (3) appellant was "capable of anything." The statements are patently hearsay since they were offered to prove the truth of the matters asserted, Rule 801(c), Ariz.R.Evid.

The State urges first that appellant failed to object to all the statements that the victim feared the appellant. The record, however, indicates that defense counsel objected early in the trial to any testimony as to the victim's state of mind. The trial judge at that time indicated he would allow all such testimony. We have held:

"It must be remembered that the whole issue had evidently been argued out thoroughly before the court, and that the court had stated specifically that evidence of this kind was admissible. It is the rule that where an objection to a certain class of evidence is distinctly made and overruled, the objection need not be repeated to the same class of evidence subsequently received, although the evidence is given by or question asked of another witness. In other words, the objection is treated as a continuing one. * * *

'Courts are not required to listen to and decide repetitions of the same objection when wholly unnecessary to protect the rights of a party.'"

*Tucker v. Reil*, 51 Ariz. 357, 368, 77 P.2d 203 (1938).

*Accord*, 1 Wigmore, Evidence, § 18(4); and see *State v. Briggs*, 112 Ariz. 379, 382, 542 P.2d 804 (1975), where it was held that when a motion in limine was denied, evidentiary points on appeal are preserved without an objection having been made during the trial.

The State argues the hearsay statements were admissible under the state of mind exception of Rule 803(3), Ariz.R.Evid., which in part provides:

"The following are not excluded by the hearsay rule * * * :

(3) * * * A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as * * mental feeling * * * ), *but not* including a statement of memory or belief to prove the fact remembered or believed * * *." (Emphasis added.)

The testimony that the victim said appellant was "capable of anything" and had threatened her were nothing more than statements of "memory or belief to prove the fact remembered or believed." Such assertions are not within the Rule 803(3) exception and were not admissible. See *Shepard v. United States*, 290 U.S. 96, 103–104, 54 S.Ct. 22, 25–26, 78 L.Ed. 196 (1933); *United States v. Brown*, 490 F.2d 758, 775 (D.C.Cir.1973).

Other testimony that the victim feared the appellant was within the exception. But to be admissible, the hearsay must still be relevant. *State v. Ramirez*, 116 Ariz. 259, 265, 569 P.2d 201 (1977); *State v. Lehman*, 126 Ariz. 388, 390, 616 P.2d 63 (App. 1980). A victim's state of mind is only relevant when identity or the defense of accident, suicide or self-defense is raised. *State v. Ramirez*, supra; *State v. Lehman*, supra. None of these was an issue here. The victim's fear of appellant was not admissible.

■ Appellant's counsel cross-examined the victim's daughter about her discussions of the case with her relatives and the prosecutor. To rebut a possible inference of fabrication, the prosecution elicited from Kim the fact that she had given a statement to the police before talking to other persons about the case. The prosecution then questioned Kim about her discussions with counselors in a victim-witness program.

"Q. And you have talked to the people from the victim-witness program in the County Attorney's Office?

A. Yes.

Q. Are some of those discussions that you had to help you?

\*     \*     \*     \*     \*     \*

A. In a way, yeah.

Q. Have you also been seeing a counselor at school?

A. Yes.

[DEFENSE COUNSEL]: Excuse me. Your Honor, this is beyond the scope of cross examination. It is not relevant to any issue in this case."

After the objection was overruled, this question was asked and answer given:

"Q. Is that to help you with the problem of your mother dying in part?

A. Yeah."

On appeal, the State argues that this particular testimony was elicited to show that Kim's story was not fabricated. The questioning about counseling to help Kim deal with her mother's death went beyond this. Its admission supplied the only fact which allowed the prosecutor to make the following emotional argument:

"Kim didn't tell you her mother was a terrible person or she was an awful mother. Kim loved her mother and she told you she is going to counseling now because of the loss that she has felt—or feels. Shirley Christensen was important to her."

What constitutes proper rebuttal, including proper rehabilitation of a witness, is largely within the trial court's discretion and the trial court's ruling will not be disturbed on appeal without an abuse of that discretion. Udall, Arizona Law of Evidence, § 69; see *State v. Young*, 116 Ariz. 385, 569 P.2d 815 (1977). But here there was a clear abuse of discretion when the prosecution was permitted to question Kim about the reasons for her discussions with counselors not mentioned on cross-examination.

■ Appellant objects to the admission of autopsy photographs of the victim. In this, we find no error. A photograph of a murder victim is admissible if it has probative value and if its probative value is not substantially outweighed by its potential to prejudice the jury. See *State v. Smith*, 123 Ariz. 243, 251, 599 P.2d 199 (1979); *State v. Steele*, 120 Ariz. 462, 464, 586 P.2d 1274 (1978); Rules 401, 402 and 403, Ariz.R.Evid. The determination of whether the prejudice caused by the photographs substantially outweighs its probative value is within the sound discretion of the court, and this determination will not be disturbed on appeal without a clear showing of abuse of discretion. *State v. Powers*, 117 Ariz. 220, 571 P.2d 1016 (1977); *State v. Makal*, 104 Ariz. 476, 455 P.2d 450 (1969). These photographs showed the nature and location of the injuries, which are relevant on the existence of premeditation. They also illustrated the testimony of the pathologist, who stated the photographs would aid the jury in understanding his testimony and opinions. We do not find the photographs to be overly gruesome. There was no abuse of discretion.

■ Appellant complains of testimony by Kim relating to two matters, one an incident six months prior to the homicide during which appellant slapped the victim, and the other an expression of an opinion that appellant was "mean." Appellant alleges the former was an inadmissible prior bad act and the latter was an inadmissible opinion on a defendant's character, citing Rule 404, Ariz.R.Evid.

No objection was made to the testimony about the slapping incident. The only objections to the opinion testimony was lack of foundation and that it was speculative and conclusionary. By not objecting, *State v. Nettz*, 114 Ariz. 296, 299, 560 P.2d 814 (App.1977), or in assigning grounds for objection not raised below, see *State v. Dickey*, supra 125 Ariz. at 169, 608 P.2d 302, appellant waived any error not fundamental. In light of all the evidence produced, it is clear appellant was not found guilty solely on evidence of his bad character. There was no fundamental error. See *State v. Nettz*, supra.

■ During the State's case on direct examination a witness testified that the victim had "called me to tell me that Chris had taken her car—her son's car and had taken some checks from the checkbook that the store had." Previously the court had ruled prohibiting the mentioning of any items missing from the store owned by appellant and the victim. Appellant's motion for a mistrial was denied. Appellant's argument that the denial of the motion for a mistrial was error is rejected. A mistrial is a serious remedy. Its granting is left to the sound discretion of the trial court, which will not be disturbed unless it is plainly abused. *State v. Trotter*, 110 Ariz. 61, 65, 514 P.2d 1249 (1973). We find no error in the failure to grant a mistrial, particularly in the light of the fact that appellant did not move to strike the testimony or request a curative instruction.

Appellant contends he was deprived of his right to be present when the trial judge sent communications to the jury. During the first day of deliberation, the jury sent a note to the judge, which read:

> "The jury requests a legal definition of 'reckless disregard for human life.' "

Counsel met with the judge in his chambers to discuss the note. At this meeting, the appellant was not present. It was agreed that the following written response would be sent to the jury:

> "You have been adequately instructed. Please continue your deliberations."

The following day, another note was sent to the judge:

> "The jury requests a transcript of the testimony of the pathologist."

Again counsel met with the judge in chambers without appellant present. The State argued that a transcript should be provided for the jury, but appellant's counsel argued against it. Counsel then agreed that another note should be sent to the jury, instructing it:

> "Please rely on your collective memories as to the pathologist's testimony."

These proceedings are reflected only in minute entries. No court reporter was present.

Appellant complains that he had a right to be personally present during these in-chambers conferences. We have held that the trial judge is not to communicate with the jury during its deliberations without first notifying counsel and the accused. *State v. Robin*, 112 Ariz. 467, 543 P.2d 779 (1975). The purpose of this rule is to prevent the judge from injecting his own opinions into the deliberations or influencing the jurors. See *State v. Lawrence*, 123 Ariz. 301, 305–306, 599 P.2d 754 (1979); *State v. Pawley*, 123 Ariz. 387, 390, 599 P.2d 840 (App.1979); *State v. Corrales*, 121 Ariz. 104, 105, 588 P.2d 846 (App.1978). But the defendant has no right to be personally present during such communications. *State v. Pawley*, supra.

■ Appellant argues he had a federal constitutional right to be present in person, which right cannot be fulfilled by the presence of his counsel. We disagree. The right to be personally present applies only to those proceedings in open court "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 105–106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (no right to be present at jury view); *accord, Bustamante v. Eyman*, 456 F.2d 269, 273 (9th Cir. 1972); *Stein v. United States*, 313 F.2d 518, 522 (9th Cir. 1962) (no right to be present at in-chambers conference between court and counsel); *State v. Perez*, 115 Ariz. 30, 563 P.2d 285 (1977). In this instance, appellant did not have a constitutional right to be personally present in the court's chambers to discuss how to handle the jury's communications.

■ Appellant argues that the prosecutor made an impermissible comment on his failure to testify.

In general, a prosecutor is prohibited from directly or indirectly drawing the jury's attention to the fact a defendant did not testify. This prohibition is a matter of statutory and constitutional law, both Arizona and federal. *Griffin v. State of California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Art. 2, § 10, Ariz.

Const.; *State v. Cannon*, 118 Ariz. 273, 576 P.2d 132 (1978); A.R.S. § 13–117(B), former A.R.S. § 13–163, 5 A.R.S.

In determining whether the argument was improper, the statements must be examined in the context in which they were made. *State v. Edwards*, 122 Ariz. 206, 216, 594 P.2d 72 (1979); *cert. granted on other issue*, 446 U.S. 950, 100 S.Ct. 2915, 64 L.Ed.2d 807 (1980). The decision turns on whether they were of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *United States v. Bonilla*, 615 F.2d 1262, 1264 (9th Cir. 1980); *State v. Pierson*, 102 Ariz. 90, 92, 425 P.2d 115 (1967); *State v. Crank*, 13 Ariz.App. 587, 590, 480 P.2d 8 (1971).

The portion of the prosecution's argument to which appellant takes exception is:

" * * * he [appellant] comes and tells us via the tape recording which can't be cross examined."

urging that this comment was specifically calculated to call to the jury's attention the fact that appellant did not testify during his trial. However, we do not think this was improper argument or tended to point out that which had not already been stressed by appellant's prior argument to the jury. The appellant's attorney stated:

"You might be frustrated that we didn't ask something or that you had a better question, you know, those lawyers, you could have done it better. You might have had a better question and you didn't get it. You can't guess. You can't wonder why somebody didn't appear or maybe, you know, why you didn't hear from Chris from the witness stand.

Well, I will tell you that you have heard from him in every relevant way, in his diary, a person's diary. You have heard in his statement he had nothing different to say. From the statement, from the notes. You have also had an opportunity to view him in his emotional state here. I decide whether or not he can handle things here. Well, you have heard from him and you have heard from all the witnesses. If you didn't hear from them,

you can't speculate why not. The Judge will tell you that."

In *State v. Arredondo*, 111 Ariz. 141, 526 P.2d 163 (1974), we held that a comment by the prosecution was a comment on the failure of defendant to take the stand. We said that normally such a comment constitutes fundamental error. We pointed out, however, that the comment was invited and the defense interjected the matter of the defendant not taking the stand because in at least two prior instances the defense specifically made references to the fact the defendant did not choose to testify. We hold that the remark of the prosecution did not go beyond a pertinent reply and was not reversible error.

The judgment of conviction is reversed and this matter is remanded for proceedings consistent with this decision.

HOLOHAN, V. C. J., and HAYS, J., concur.

CAMERON, Justice, concurring.

While I concur in the result, I disagree with the majority opinion in its treatment of the comment by the State in its argument to the jury on defendant's failure to testify. In this, I adhere to my dissent in *State v. Arredondo*, 111 Ariz. 141, 526 P.2d 163 (1974).

In the instant case, after being advised of his rights, defendant gave a taped statement to police. He also spoke to police in the car on his way back to Tucson following his arrest.

At trial the State introduced and played to the jury the taped statement defendant gave to the police, as well as other statements defendant had made to the police and others about the crime. Defendant conceded that he killed his wife. His defense was that it was manslaughter rather than murder. Thus the only issue at trial was malice.

Defendant did not testify at trial. During the closing argument, defendant's attorney stated:

"You might be frustrated that we didn't ask something or that you had a better question, you know, those lawyers, you could have done it better. You might have had a better question and you didn't get it. You can't guess. You can't wonder why somebody didn't appear or maybe, you know, why you didn't hear from Chris from the witness stand.

"Well, I will tell you that you have heard from him in every relevant way, in his diary, a person's diary. You have heard in his statement he had nothing different to say. From the statement, from the notes. You have also had an opportunity to view him in his emotional state here. I decide whether or not he can handle things here. Well, you have heard from him and you have heard from all the witnesses. If you didn't hear from them, you can't speculate why not. The Judge will tell you that."

During the State's closing argument, the prosecutor stated:

"The incident on New Year's Eve. Well, you heard testimony about what happened, how the police got there, you heard from Kim. * * * [A]nd *she was subject to cross examination* by the defense, * * *.

* * * * * *

"Now, it either works for both of us or it doesn't work for both of us, but it can't work half for him when he wants it to and half when it doesn't. If we believe things that were said to other people about the threats—we are not supposed to believe that, excuse me, but we are supposed to believe what Shirley Christensen said to the defendant and that he comes and tells us via the tape recording *which can't be cross examined.*" (emphasis added)

Our Constitution states:

"§ 10. Self-incrimination; double jeopardy
"Section 10. No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense." Ariz. Const., Art. 2, § 10.

Our statute, A.R.S. § 13–117, states:

"Defendant as witness; no comment on failure to testify
"A. A defendant in a criminal action or proceeding shall not be compelled to be a witness against himself, but may be a witness in his own behalf. If he offers himself as a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness.

"B. The defendant's neglect or refusal to be a witness in his own behalf shall not in any manner prejudice him, or be used against him on the trial or proceedings."

And the United States Supreme Court, in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), held that a defendant's right not to testify and to be free from comment concerning that choice is part of the protected Fifth Amendment privilege against self-incrimination. We have stated:

" 'Under both federal law (citation omitted) and Arizona law (citations omitted), a direct or indirect comment upon the failure of the defendant to testify or give evidence at the trial violates his Fifth Amendment rights under the United States Constitution and his Article 2, Section 10 rights under the Arizona Constitution. *State v. White*, 16 Ariz.App. 279, 282, 492 P.2d 1217, 1220 (1972). See also *State v. Rhodes*, 110 Ariz. 237, 517 P.2d 507 (1953); *State v. Acosta*, 101 Ariz. 127, 416 P.2d 560 (1966); *State v. Smith*, 101 Ariz. 407, 420 P.2d 278 (1966); *State v. Villalobos*, 6 Ariz.App. 144, 430 P.2d 723 (1967).' " *State v. Cannon*, 118 Ariz. 273, 274, 576 P.2d 132, 133 (1978).

The prosecutor's comment here drew the jurors' attention to the fact that the defendant did not testify. *State v. Acosta*, 101 Ariz. 127, 416 P.2d 560 (1966), quoting 1 Underhill, Criminal Evidence 323 (5th Ed. 1956). See also *State v. Lee*, 114 Ariz. 101, 559 P.2d 657 (1976); *State v. Davis*, 115 Ariz. 3, 562 P.2d 1370 (App.1977); *State v. Galbraith*, 114 Ariz. 174, 559 P.2d 1089 (App.1976). The prosecutor's remarks spe-

cifically focused the attention of the jury to the fact that defendant did not take the stand and could not be cross-examined. We find this especially egregious in light of the prosecutor's statement pointing out that the State's witness, Kim Vincent, was subject to cross-examination. The contrast between the availability for cross-examination of the State's witness and the defendant could hardly have gone unnoticed by the jury. Whether this was intended or not, the prosecutor's remarks were a comment on defendant's failure to testify.

The State and the majority contend, however, that if the prosecutor's comment was error, it was invited error and justified as a response to the argument made by defense counsel and therefore not reversible.

The doctrine of invited error has often been articulated by this court:

" 'Where remarks of the prosecuting attorney, even if improper, are invited or occasioned by accused's counsel, or are in reply to or retaliation for, his acts or statements, they are, as a general rule, not grounds for reversal, * * * '." *State v. Gortarez*, 98 Ariz. 160, 168, 402 P.2d 992, 997–98 (1965), quoting 23A C.J.S. Criminal Law, § 1108 (1961). See also *State v. Edwards,* 122 Ariz. 206, 594 P.2d 72 (1979); *State v. Starr,* 119 Ariz. 472, 581 P.2d 706 (App.1978).

I do not agree with the court's disposition of this issue for two reasons. First, I do not believe that the prosecutor's statement in this case was justified by defense counsel's closing comments. His statements were a preview of the judge's instructions regarding the defendant's Fifth Amendment right, which emphasized that the jury was not to draw any negative inferences from the fact that defendant was not on the stand to testify. A correct statement by defense counsel regarding inferences to be drawn by the jury about defendant's failure to testify does not open the door to prosecutorial comments which characterize defendant's silence as guilt. *United States ex rel. Mitchell v. Pinto,* 438 F.2d 814 (3rd Cir.), cert. denied 402 U.S. 961, 91 S.Ct.

1622, 29 L.Ed.2d 124 (1971). The State's comment went directly to the fact that defendant was not available for cross-examination and implied defendant was therefore less credible.

Second, I question whether the right of the defendant to be free from comment about his failure can be waived by defendant's counsel. Admittedly, it is often held that defendant is responsible for the actions, strategy and comments of his attorney. However, comments upon the defendant's right to not take the stand is fundamental error under our statute and Constitution, and I do not believe it can be waived by the defendant's counsel alone. Even if we assume that defendant's counsel inferred that defendant failed to take the stand at the suggestion of his counsel, that should not allow the prosecutor to comment on defendant's exercise of his right to take the stand. But see *State v. Arredondo,* supra.

I might be persuaded that this error was harmless beyond a reasonable doubt if the defendant had only denied killing the victim, because the evidence of the homicide was overwhelming. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Defendant, however, defended on the basis that it was manslaughter rather than murder. I cannot say that the comment on defendant's failure to take the stand was such that it did not, beyond a reasonable doubt, contribute to his conviction of the higher degree of homicide. The comment was not, then, harmless error. *Chapman v. California,* supra.

GORDON, Justice, concurring.

I concur in Justice CAMERON's concurring opinion.