Concurrence by Judge BEA
OPINION
SCHROEDER, Circuit Judge:
Richard Greenway is an Arizona state prisoner. A jury convicted him of the brutal 1988 murders of a mother and her teenage daughter during a burglary in Tucson, Arizona. He was tried and'convicted of burglary, armed robbery, theft by control, arson of an unoccupied structure, as well as two counts of murder in the first degree, and sentenced to death in 1989. Following his appeal and state court post-conviction proceedings, the district court denied his 28 U.S.C. § 2254 petition.
We heard his first federal appeal in 2011. Greenway v. Schriro, 653 F.3d 790 (9th Cir. 2011). Our decision affirmed the district court’s denial of Greenway’s claims of ineffective assistance at sentencing, but remanded for the district court to consider on the merits the claims of ineffective assistance at trial and on direct appeal. Id. at *678 793. The district court has now done so and has denied them. Greenway seeks review in this appeal.
The district court spent a good deal of time attempting to determine what claims were within the scope of our remand, because Greenway made additional contentions. Although the district court found that many of the claims were not within the scope of the remand, it’ concluded that an intervening Supreme Court decision required consideration of some of the ineffectiveness claims in any event. See Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012). We do not need to consider Greenway’s argument that the district court erred in determining that some claims were outside the scope of our remand, however, since the determination does not affect the scope of the issues before us in this appeal.
The district court granted a certificate of appealability regarding two claims of ineffectiveness. Both relate to trial counsel’s alleged failure to present defenses. Neither has merit.
Greenway claims trial counsel failed adequately to present an overall defense theory. Defense counsel at trial argued that the evidence showed only that Greenway was involved in destroying the stolen property after the murders had occurred. This theory was consistent with the physical evidence. No viable alternative theory appears in the record, and Greenway does not suggest one. Ineffectiveness has not been shown.
The district court also certified the issue of whether trial counsel should have explored the possibility of a mental incapacity defense of impulsivity, as recognized in Arizona, in order to negate premeditation. See State v. Christensen, 129 Ariz. 32, 628 P.2d 580, 583-84 (1981). We conclude the suggested defense would have been counterproductive, as it would have placed Greenway as a principal in the murders, and would likely not have overcome the strong evidence of premeditation in any event.
This court additionally asked for supplemental briefing on Greenway’s claim that trial counsel was ineffective during voir dire in failing to discover that a juror had been the victim of a violent crime that would have disqualified that juror. We conclude that this claim is also without merit. We deny a certificate of appealability as to all other claims.
BACKGROUND
The facts relating to the nature of the crime and the procedural history are set forth fully in our prior opinion. See Greenway, 653 F.3d at 794. We summarize here briefly.
Police found the bodies of Lili Champagne and her daughter, Mindy Peters, in their home; each had been shot twice. Evidence suggested that the two had been killed in the course of a robbery. Following a news bulletin asking for information regarding the victims, Greenway’s sister notified homicide detectives that Greenway knew something about the incident. Detectives picked up Greenway and his co-defendant, Chris Lincoln, for questioning. Lincoln confessed to participating in the killings and implicated Greenway. Green-way and Lincoln were then both arrested and charged with several counts, including murder.
Before trial, Greenway was placed in a cell with Anthony Schmanski. Schmanski, according to his trial testimony, asked Greenway why he was in jail, and Green-way answered, “Well, I just blew two people away” because “they had seen [my] face.” Further investigation revealed Greenway had attempted to sell the victims’ car stereo to Brian Mize, Greenway’s *679 co-worker. According to Mize’s trial testimony, Greenway told Mize that he went to the victims’ house and, after taking “some stuff,” shot the victims. Greenway also told Mize that, after he shot the older lady, “her body rolled over and blood gushed out of her head.” See State v. Greenway, 170 Ariz. 155, 823 P.2d 22, 26 (1991).
There was also evidence that Greenway knew the victims. He had been to a party with Mindy in late 1987. Greenway met Lili shortly thereafter when Greenway went to their house to return Mindy’s wallet.
Prior to trial, Greenway’s trial counsel had submitted proposed voir dire questions to the court, including: “Have any of you ever been the victim of a crime or testified in a criminal case?” and “Has anyone on the panel ever been the victim of a sex related crime?” During voir dire, the trial court did not ask these questions as proposed. Instead, the trial court asked: “Have any of you ever been a witness in a criminal case? Ever come to Court and testified in a criminal case?” The court also asked whether any juror had “ever been a witness to a criminal act where the police came out and they took your statement.” Juror Virginia Coker remained silent, indicating negative responses to the questions. The next day, Coker approached the bench and disclosed to the judge that she had called the police regarding a domestic violence incident, but she did not disclose any other occasion when she had been a witness or given a statement to the police. Before the conclusion of voir dire, the court asked the attorneys whether there were any specific questions that they thought the court should ask. Greenway’s counsel did not ask for his questions as originally proposed. Juror Coker was empaneled on Greenway’s jury.
Greenway’s trial lasted only three days, and the jury returned a guilty verdict on all counts the following day. In accordance with Arizona law at the time, the trial judge made the life or death sentencing decision after an aggravation-mitigation hearing. The judge sentenced Greenway to death.
In 1994, five years after trial, Coker signed an affidavit stating that, in addition to the domestic violence incident, she had been the victim of a violent crime—a home invasion and sexual assault—seven years prior to serving on Greenway’s jury. She also said that she had testified against her attacker at his trial.
DISCUSSION
Because Greenway filed his petition for a writ of habeas corpus after April 24, 1996, the Antiterrorism and Effective Death Penalty Act (“AEDPA”) applies. Lindh v. Murphy, 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under AEDPA, we may disturb a state court’s rulings only if they were “contrary to” or “involved an unreasonable application of’ clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). In this case, the state court did not rule on the merits of the claims. See Greenway, 653 F.3d at 800. The district court therefore correctly considered the claims de novo. On appeal, we review de novo the district court’s denial of Greenway’s habeas petition. See Lopez v. Schriro, 491 F.3d 1029, 1036 (9th Cir. 2007).
To prevail on a claim of ineffective assistance of counsel, Greenway must show that counsel’s performance was both inadequate and that the inadequate performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The inquiry under Strickland is “highly deferential,” and “every effort [must] be made *680 to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052.
A. Ineffectiveness During Voir Dire
Greenway did not raise an ineffective assistance claim relating to juror Coker in his state court post-conviction proceedings or in his original federal habeas petition. He did raise it before the district court on remand and we requested briefing on the merits in this appeal. Although the claim is unexhausted, we summarily discuss the merits.
The issue we must determine is whether counsel was ineffective during voir dire in not bringing forth the prior history of juror Coker. The answer must be in the negative. Counsel was not clairvoyant and had no reason to believe the prospective juror was withholding information. It is true that counsel requested the court to ask questions that, if the juror had decided to answer, might have put everyone on notice that the prospective juror had been a victim of a violent crime in her home. The judge did not ask the questions in precisely the requested form, however, and the juror answered the questions as posed by the judge. She revealed a domestic violence incident, but not her own sexual assault during a home invasion. Counsel had no reason to believe that there was anything more to disclose beyond the domestic violence incident she had described, nor are we persuaded that had Coker been asked the question as requested, she would have disclosed the sexual assault, and thereby been disqualified.
Greenway’s claim is therefore far too speculative for a court to conclude that counsel was ineffective during voir dire. Accordingly, after reviewing the requested supplemental briefing from the parties, we find no basis for disturbing the district court’s dismissal of the claim.
B. Ineffectiveness with Respect to the Investigation and Defense Theory
The state trial was brief, with high stakes, and in both state court and this court, Greenway faults counsel for failing to conduct a deeper and broader investigation, to present additional witnesses, and to present a cohesive defense theory. Yet, there is not now, nor has there ever been any suggestion of what that further investigation could have yielded in terms of evidence that would have changed the result of the trial.
The only available witness Greenway now argues should have been called was Schmanski’s landlady who, he contends, would have testified that Schmanski was an untrustworthy drunk. The jury, however, knew that Schmanski was an alcoholic. In closing argument, the prosecutor conceded, “Mr. Schmanski has a drinking problem [and] is an alcoholic.” Defense counsel, in closing argument, emphasized that Schmanski was not only an alcoholic, but also was receiving psychological treatment and wanted to cut a deal. In short, Schmanski’s landlady would have added little to what the jury already knew. Even if the jury had heard from Schmanski’s landlady, that Schmanski was a drunk whose word could not be trusted, there is no reasonable probability of a different result at trial.
There was another potential witness, named Darrin Saige, who could not be located at the time of trial. Greenway now raises the possibility that Saige might have provided testimony to suggest that Green-way had only helped to destroy the evidence and was not at the scene of the murders. The problem is that we have no affidavit from Saige, or anyone else, to that effect.
*681 The only indication in the record that Saige may have had any relevant information is in'the form of notes from an investigator. The notes do not suggest that Saige could have provided material, admissible, exculpatory evidence. The notes indicate that Lincoln told Saige three different versions of the events in this case. In two versions, Lincoln implicated Greenway in the burglary and murders. In one version, Lincoln said that Greenway only helped to dispose of the property. According to Greenway, trial counsel should have called Saige to testify as to this third version of events, which Saige would have asserted was the truthful version. We are asked to assume that the jury would have credited the exculpatory version, rather than the other versions, which inculpated Green-way. There is no basis for such an assumption. Because Saige’s testimony could have been more harmful than helpful, counsel was not ineffective in failing to locate Saige or present his testimony at trial.
In light of the prosecution’s case, Green-way’s counsel was not deficient in his presentation of the defense theory. The prosecutor presented evidence tying Greenway to the crimes: Greenway had tried to sell the stolen stereo equipment to his coworker; Greenway’s fingerprints were on the door of the stolen Porsche and the stock of the murder weapon; and police found the keys to the Porsche in Green-way’s trailer. The prosecutor established that Greenway knew the victims and where they lived, and had been seen driving the victims’ Porsche. The prosecutor also presented two witnesses, Schmanski and Mize, who testified that Greenway had admitted to committing the murders.
At trial, Greenway’s counsel argued that the evidence did not put Greenway at the scene of the murders. During opening statements, defense counsel emphasized to the jury that Greenway’s fingerprint simply showed “that at some point in time Mr. Greenway may have handled that rifle.” In closing argument, defense counsel emphasized that the evidence showed only that Greenway participated in disposing of the stolen property. Counsel further pointed out during closing that although Green-way’s fingerprints were found on the stock of the gun, they were not found on the trigger. In addition, Greenway’s fingerprints were not found at the murder scene. Defense counsel also attempted to discredit the testimony of the prosecution’s witnesses by attacking their credibility. The theory of defense that counsel presented at trial was reasonable, given the evidence implicating Greenway in the crimes. Greenway’s ineffective assistance of counsel claim with respect to the theory of defense therefore lacks merit.
C. Ineffectiveness in Failing to Pursue a Christensen Defense
Greenway argues defense counsel should have mounted a defense that Greenway was incapable of premeditation. In Arizona, a defendant charged with first-degree murder may seek to negate premeditation by presenting evidence of his impulsive and reflexive, rather than reflective, nature, from which the jury may infer that the defendant acted in accordance with his nature at the time of the crime. Christensen, 628 P.2d at 583 (“The establishment of the character trait of acting without reflection tends to establish that appellant acted impulsively. From such a fact, the jury could have concluded that he did not premeditate the homicide.”). We recognized the defense in Vickers v. Ricketts, 798 F.2d 369 (9th Cir. 1986), where we said, “The Arizona Supreme Court has held that the tendency to act on impulse is probative of an absence of premeditation.” Id. at 373.
*682 In this ease, however, a Christensen defense would have been counterproductive. Had counsel argued that Greenway acted impulsively, counsel would have placed Greenway at the scene of the crimes and negated the defense that he had not participated in the murders, a defense consistent with the physical evidence.
Moreover, evidence of an impulsive character trait is relevant only to rebut the showing of premeditation required for first-degree murder. A Christensen defense therefore would have had no effect on the charge of felony murder, which does not require premeditation, and is also punishable by death in Arizona. See Tison v. Arizona, 481 U.S. 137, 154, 107 S.Ct., 1676, 95 L.Ed.2d 127 (1987); State v. Woratzeck, 134 Ariz. 452, 657 P.2d 865, 868 (1982).
A Christensen defense had little likelihood of success in any event, since the evidence of premeditation was substantial. The evidence showed planning and reflection. The murder weapon required manual reloading of each bullet. The two victims were each shot twice. One was shot in the forehead through a pillow. There was no sign of a struggle at the crime scene. The shell casings were removed from the home. Greenway’s co-worker testified that Green-way admitted he wore surgical gloves during the crimes. A Christensen defense would not likely have overcome such strong evidence of premeditation. For all these reasons, Greenway’s claim that counsel was ineffective in failing to pursue a Christensen defense lacks merit.
CONCLUSION
The district court did not err in denying Greenway’s claims of ineffective assistance of counsel.
The judgment of the district court is AFFIRMED.