NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOHN DAVID ROTHROCK, *Appellant*.

No. 1 CA-CR 19-0388
FILED 11-12-2020

Appeal from the Superior Court in Maricopa County
No. CR2016-137374-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Debus & Kazan Ltd, Phoenix
By Lawrence I. Kazan, Gregory M. Zamora
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

**¶1**        John David Rothrock appeals his convictions and sentences for five counts of aggravated assault, seven counts of disorderly conduct, two counts of discharging a firearm in the city limits, and unlawful flight from law enforcement. He argues the superior court erred by precluding his proffered expert's testimony. Rothrock further challenges the sufficiency of the evidence supporting his disorderly conduct convictions and claims his sentences for aggravated assault were improperly aggravated. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        Lieutenant Wallace[2] turned left in his marked patrol vehicle when Rothrock approached the intersection in his truck and fired two gunshots in the air. Wallace stopped, exited his vehicle, and commanded Rothrock to drop his weapon. Rothrock yelled, "You're going to have to kill me," and drove off. Wallace followed Rothrock for several miles as Rothrock disobeyed traffic signals. The pursuit continued along an urban street "packed with cars, bikes, [and] people" where Rothrock crossed the center line and nearly drove into a bicycle patrol officer. Rothrock then almost collided head-on with a police truck carrying five officers.

**¶3**        By that point, multiple police vehicles joined the chase, which continued over thirty miles through the Phoenix metro area. After numerous failed attempts to stop Rothrock's vehicle, officers successfully deployed "stop sticks" and punctured Rothrock's tires. Rothrock then

---

[1]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]        To avoid identifying the victims of criminal activity, we refer to them with pseudonyms.

exchanged gunfire with officers before losing control of his vehicle and stopping. Rothrock exited the vehicle and continued shooting at officers until Officer Richards returned fire, forcing Rothrock to dive back into his truck. Officer Smith then "tased" Rothrock, temporarily incapacitating him and ending the pursuit.

¶4        The State charged Rothrock with six counts each of aggravated assault with a deadly weapon or dangerous instrument (Counts 1 through 6) and disorderly conduct (Counts 8 through 13), all dangerous offenses; two counts of unlawful discharge of a firearm (Counts 7 and 15), both dangerous offenses; and one count of unlawful flight from law enforcement (Count 14). The jury returned guilty verdicts on all counts.[3] As aggravating circumstances for four aggravated-assault convictions (Counts 2 through 5), the jury found the offenses involved the threatened infliction of serious physical injury. The court imposed concurrent prison terms, the longest being 15 years. Rothrock timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

A.        **The Superior Court Did Not Abuse Its Discretion by Precluding Rothrock's Expert Witness.**

¶5        Before the trial, the State successfully precluded Rothrock from raising a defense of "attempted suicide by cop" through his proposed expert witness, Dr. Blackwood. Rothrock argues the superior court erred by precluding the evidence, which he claims denied him the opportunity to present a complete defense. We review for an abuse of discretion. *State v. Salazar–Mercado*, 234 Ariz. 590, 594, ¶ 13 (2014).

¶6        Recognizing that evidence of a defendant's diminished capacity is inadmissible to negate the *mens rea* element of an offense, Rothrock contends he proffered Dr. Blackwood's opinion "not to show that he was incapable of forming mens rea, but to establish that he had an alternative objective in mind[,] . . . to kill himself." *See State v. Leteve*, 237 Ariz. 516, 524, ¶ 21 (2015) ("'[C]apacity evidence' which concerns a defendant's 'capacity to form mens rea,' . . . [is] prohibited by Arizona

---

[3]        For Count 6, the jurors were unable to reach a verdict on the charged offense but found Rothrock guilty of disorderly conduct as a lesser offense of aggravated assault.

law."); *State v. Mott*, 187 Ariz. 536, 541 (1997) ("Because the legislature has not provided for a diminished capacity defense, we have since consistently refused to allow psychiatric testimony to negate specific intent.").

¶7        Rothrock's distinction does not persuade us. Contrary to his argument, the record shows Rothrock intended Dr. Blackwood's testimony that Rothrock "had an alternative objective in mind" to impermissibly "negate" the *mens rea* element of the charged offenses. As Rothrock's counsel explained at oral argument on the State's motion to preclude:

> So, the whole point here is this, my client's suicidal intentions undermine what he's charged with in terms of – he's required to have certain intents for the aggravated assault charges. The State's charged him with intentionally placing these officers in fear of imminent harm.

> Well, our defense is that that wasn't his intention; that his intention was he wanted to commit suicide, and he wanted to be left alone to do that, and whatever he did was ancillary to the police.

> So, we're not using – we're not saying he attempted suicide and that justified his behavior. *We're saying that his ideas of what he was trying to do* **means that** *he didn't have the intent required to commit the crimes the State has accused him of.*

> So, I – it's not an inappropriate defense. I mean, the State is obligated to prove these intents beyond a reasonable doubt, and *we certainly can take the position that our client did not have the intent, and that his intent was something else, which was his ideas about suicide.*

(Emphasis added.)

¶8        The trial evidence, however, allowed Rothrock to argue that he intended suicide, not the criminal conduct as alleged. And he did so, albeit unsuccessfully. But Dr. Blackwood's proposed testimony opining that Rothrock's mental-health crisis caused his *inability* to develop criminal intent was improper. The superior court, therefore, did not abuse its discretion by precluding Dr. Blackwood's anticipated testimony.

¶9        Rothrock also argues Dr. Blackwood's testimony was admissible to establish his character trait for impulsiveness. Relying on

*State v. Christensen*, 129 Ariz. 32 (1981), Rothrock contends his impulsivity was relevant to the charged offenses.

¶10        *Christensen* is inapposite.  In that first-degree murder case, our supreme court concluded that the defendant's general impulsiveness was admissible to rebut evidence of premeditation. *Christensen*, 129 Ariz. at 35. Here, none of the charged offenses required proof of premeditation; thus, Rothrock's impulsivity was not at issue. *See State v. Buot*, 232 Ariz. 432, 436, ¶ 18 (App. 2013) ("[W]e do not understand *Christensen* to require a court to admit character trait evidence of impulsivity to prove a defendant did not act knowingly or recklessly for purposes of second-degree murder."); *see also* A.R.S. § 13-502(A) ("impulse control disorder[]" is not a "mental disease or defect" that may constitute an affirmative defense).

¶11        Finally, Rothrock claims the superior court's "sanction" of preclusion was improper because he timely disclosed Dr. Blackwood. We summarily reject this argument. The court did not preclude Dr. Blackwood's testimony as a sanction for violating Arizona Rule of Criminal Procedure 15.7.  Instead, the court correctly precluded the evidence because it was otherwise inadmissible.

## B.        The Jurors Had Sufficient Evidence to Convict Rothrock of Disorderly Conduct.

¶12        Rothrock raises two arguments challenging his convictions on the five counts of disorderly conduct (Counts 8 through 12) relating to the police officers in the truck he nearly hit as he drove into oncoming traffic. The convictions required proof that Rothrock, "with intent to disturb the peace or quiet of a . . . person, or with knowledge of doing so, . . . [r]ecklessly handle[d] . . . [a] dangerous instrument." A.R.S. § 13-2904(A)(6).

¶13        Rothrock acknowledges that a jury may consider whether a motor vehicle constitutes a "dangerous instrument" for purposes of A.R.S. § 13-2904. *See State v. Venegas*, 137 Ariz. 171, 175 (App. 1983) (concluding the defendant's "particular use of the automobile made the automobile a dangerous instrument" for purposes of satisfying the statutory definition of "dangerous instrument"). Focusing on the term "handles" in the statute, he argues that, although someone can drive a vehicle, the act of driving requires hands *and* feet. Thus, a vehicle cannot be "handled." According to Rothrock, the legislature intended the statute to apply only to "dangerous instruments that are capable of being managed or held by the hands, including a gun, a knife, an ax, a taser, a pipe[], or a prosthetic device." *See*

*State v. Schaffer*, 202 Ariz. 592, 596, ¶ 19 (App. 2002) (concluding a defendant's prosthetic arm may be considered a "dangerous instrument" for purposes of charging aggravated assault). We review issues of statutory interpretation *de novo. State v. Peek*, 219 Ariz. 182, 183, ¶ 6 (2008).

**¶14**　　　　Rothrock's argument is without merit. "Handling" a motor vehicle is a widely accepted idiom for "driving" one. More specifically, the term is used to describe a vehicle's performance. As a popular online encyclopedia explains:

> **Automobile handling** and **vehicle handling** are descriptions of the way a wheeled vehicle responds and reacts to the inputs of a driver, as well as how it moves along a track or road. It is commonly judged by how a vehicle performs particularly during cornering, acceleration, and braking as well as on the vehicle's directional stability when moving in steady state condition.

*Automobile Handling*, Wikipedia, https://en.wikipedia.org/wiki/Automobile_handling (last visited November 5, 2020); *see also* Mac Morrison, *Ten of the Best-Handling Cars on Earth for 2020*, Automobile (Oct. 31, 2019), https://www.automobilemag.com/news/best-handling-cars/; *Hasten v. State*, 35 Ariz. 427, 431 (1929) (discussing the public policy of deterring driving under the influence and mentioning a driver's "ability to handle [automobiles]").

**¶15**　　　　Based on this commonly understood meaning of "to handle" used in connection with a motor vehicle as its object, we conclude the legislature intended to include driving a motor vehicle within the class of potentially criminal conduct prohibited by the phrase "handling a dangerous instrument" in A.R.S. § 13-2904(A)(6). *See State v. Cotton*, 197 Ariz. 584, 586, ¶ 6 (App. 2000) (courts should give words in a statute their ordinary common meaning unless the legislature has clearly expressed an intent to provide a term special meaning). Rothrock does not otherwise challenge the evidence showing he drove his truck in a manner and under circumstances that rendered it a dangerous instrument. *See Schaffer*, 202 Ariz. at 596, ¶ 17 (based on a prosthetic device's characteristics and the "circumstances in which it is used," it may properly be considered a "dangerous instrument").

**¶16**　　　　Rothrock also argues the evidence does not show he acted with the requisite state of mind. He contends he could not have

intentionally or knowingly disturbed the victims' peace because the police truck "turned into his path" after he crossed the median and drove into oncoming traffic.

¶17          We review a claim of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence may be direct or circumstantial and "is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of [a] defendant's guilt beyond a reasonable doubt.'" *State v. Borquez*, 232 Ariz. 484, 487, ¶ 9 (App. 2013) (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)).

¶18          The evidence outlined above establishes that Rothrock initiated contact with Lieutenant Wallace to provoke a car chase, if not an exchange of gunfire that would result in his death. *Supra*, ¶ 2. Rothrock ultimately incited officers by firing his gun at them after violating multiple traffic laws and refusing to obey commands to stop. Accordingly, a juror could reasonably conclude that Rothrock maneuvered his vehicle into oncoming traffic intending or knowing that doing so would disturb the peace of police officers who were in his direction of travel either at the moment he crossed the median or, as here, immediately thereafter as they responded to the ongoing threat posed by Rothrock's driving. Thus, sufficient *mens rea* evidence supports Rothrock's convictions on Counts 8 through 12.

**C.     The Court Did Not Abuse Its Discretion by Imposing an Enhanced Sentence for the Aggravated Assault Convictions.**

¶19          Finally, Rothrock argues the court erred by relying on "threatened infliction of serious physical injury" to impose increased sentences for the aggravated assault convictions because that aggravating circumstance is an element of the offenses. *See* A.R.S. § 13-701(D)(1) ("Infliction or threatened infliction of serious physical injury [shall be considered as an aggravating circumstance], except if this circumstance is an essential element of the offense of conviction . . . ."); *see also State v. Pena*, 209 Ariz. 503, 506–07, ¶ 14 (App. 2005) (confirming it is an error to use infliction of serious physical injury as an aggravating circumstance when the defendant is convicted of aggravated assault based on serious physical injury). Whether a court can consider an aggravating factor when sentencing a defendant presents a legal question that we review *de novo*. *State v. Alvarez*, 205 Ariz. 110, 113, ¶ 6 (App. 2003).

¶20          The applicable element of the offenses, as charged, is "apprehension     of     imminent     physical     injury,"     A.R.S.

§§ 13-1203(A)(2), -1204(A)(2), not "threatened infliction of serious physical injury," A.R.S. § 13-701(D)(1). Thus, the offense and the aggravating factor each require proof of facts the other does not. The former requires the victim to anticipate an imminent injury, and the latter requires a defendant to threaten a serious injury. *Compare* A.R.S. § 13-105(33) (defining "physical injury") *with* A.R.S. § 13-105(39)(defining "serious physical injury"); *see State v. Eagle*, 196 Ariz. 188, 190, ¶ 6 (2000) ("In deciding whether a defendant has been punished twice for the same offense, it is necessary to examine the elements of the crimes for which the individual was sentenced and determine 'whether each [offense] requires proof of an additional fact which the other does not.'") (alteration in original) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Unlike the offense, the aggravating factor does not require that the victim perceive an immediate injury. *Cf. State v. Pina-Barajas*, 244 Ariz. 106, 108, ¶ 5 (App. 2018) ("An imminent injury is one that is immediate, about to occur, or impending. A threat of imminent injury is necessarily distinct from one of eventual harm, which would functionally erase the imminence element from our statute's definition of the necessity defense.") (internal quotation marks and citations omitted).

¶21     The superior court did not abuse its discretion by using the aggravating circumstance to enhance Rothrock's sentence.

## CONCLUSION

¶22     We affirm Rothrock's convictions and sentences.

